CHARLES C. KELLY, II, State Bar No. 122253
MONTANA BAKER, State Bar No. 319491
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544

Attorneys for Plaintiffs
ANDREA JONES and A.H.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREA JONES, an individual and A.H., a minor, by and through his Guardian ad Litem Andrea Jones,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF OAKLAND, a municipal corporation; OAKLAND POLICE DEPARTMENT, a municipal corporation; HAROLD CASTRO, individually, and in his capacity as law enforcement officer for OAKLAND POLICE DEPARTMENT; and DOES 1-10, inclusive, individually and in their capacities as law enforcement officers and/or personnel for OAKLAND POLICE DEPARTMENT,<br><br>Defendants. | Case No. 3:19-cv-00789-JCS<br><br>**FIRST AMENDED COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs ANDREA JONES and A.H., a minor, by and through his Guardian ad Litem Andrea Jones, bring this civil rights action to redress the attempted murder they survived.

## INTRODUCTION

1. This is an action for damages brought pursuant to Title 42 U.S.C §§ 1983 and 1988 and the Fourteenth Amendment to the United States Constitution. This action is against

the City of Oakland, Oakland Police Department, and Oakland Police Officer Harold Castro. It is also alleged that these violations were committed due to policies, practices and customs of the Oakland Police Department.

**JURISDICTION AND VENUE**

2. This action arises under 42 U.S.C. § 1983 in relation to the Defendants' deprivation of Plaintiffs' constitutional rights. Accordingly, this Court has federal questions jurisdiction under 28 U.S.C. §§ 1331, 1343.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391, because a substantial part of the acts or omissions giving rise to the claims for relief occurred in or were directed to this District, and each of the Defendants is subject to the personal jurisdiction of this Court.

4. This Court has personal jurisdiction over the Defendants, because each Defendant is domiciled in the State of California, has sufficient minimum contacts with California, and otherwise has intentionally availed himself, herself, or itself of significant benefits provided by the State of California, rendering the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

**PARTIES**

**A. Plaintiffs**

5. Andrea Jones ("Plaintiff Jones") is an individual who, at all times relevant to the Complaint, was domiciled in Oakland, California.

6. A.H. ("Plaintiff A.H.") is an individual and minor who, at all times relevant to the Complaint, was domiciled in Oakland, California.

**B. Defendants**

7. City of Oakland (the "City"), is a municipal entity duly organized and existing under the laws of the State of California.

8. Oakland Police Department ("OPD"), is a municipal entity duly organized and existing under the laws of the State of California.

9. Oakland Police Officer Harold Castro ("Officer Castro") is sued in his

individual and official capacities.

10. Plaintiffs are unaware of the true names and/or capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.

11. Plaintiffs believe and allege that each of the DOE Defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth. Each Defendant proximately caused injuries and damages because of their negligence, breach of duty, negligent supervision, management or control, violation of public policy, and false arrests.

12. Each Defendant is liable for his/her personal conduct, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, ownership, entrustment, custody, care or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint subject to further discovery.

13. In doing the acts alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

14. In doing the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under color of law.

15. Due to the acts and/or omissions alleged herein, Defendants, and each of them, acted as the agent, servant, and employee and/or in concert with each of said other Defendants herein.

**FACTUAL BACKGROUND**

16. At all relevant times herein, Plaintiff Andrea Jones resides at 9518 Las Vegas Avenue, Oakland, California. Plaintiff Jones is the mother of Plaintiff minor A.H. who at all relevant times herein resided with her at 9518 Las Vegas Avenue. Plaintiff Jones and Plaintiff A.H. are both African American.

17. At all relevant times herein, Jesse Enjaian resided at 9512 Las Vegas Avenue, Oakland, California, a home located directly next to Plaintiffs' residence. Jesse Enjaian was

Caucasian.

18. Jesse Enjaian, while living at 9512 Las Vegas Avenue, was mentally ill and unstable, paranoid and not taking his prescribed medication, possessed firearms on the premises, and was prone to violence and violent outbursts against his Las Vegas Avenue neighbors.

**A. First Shooting On February 10, 2017**

19. On February 10, 2017, at approximately 10:30 p.m., Plaintiff Jones heard cracking noises outside of her window.

20. Her next-door neighbor, Jesse Enjaian, shot at and destroyed a parked vehicle in front of Plaintiff Jones' residence at 9518 Las Vegas Avenue. Jesse Enjaian shot out the passenger side windows and punctured the rear tires with a knife. The vehicle was filled with bullet holes and was undriveable.

21. The vehicle Jesse Enjaian shot at and destroyed belonged to Dante Owens, an African American man. Mr. Owens was attending a family gathering with two other African American men accompanying him in his vehicle. Jesse Enjaian targeted Dante Owens' vehicle because he and his companions were African American.

22. At approximately 11:30 p.m. Plaintiff Jones awoke to the raised voices of Mr. Owens and his companions outside her bedroom window. Mr. Owens had discovered the destruction of his vehicle. Plaintiff Jones went outside her residence and spoke with Mr. Owens and his companions as one of them called the Oakland Police Department to report the shooting.

23. At approximately 12:00 a.m. on February 11, 2017, approximately four Oakland Police Officers arrived at the scene of the shooting. The Officers were wearing full police uniform and parked their plainly marked police vehicles in front of Plaintiff Jones' driveway.

24. The Officers located and identified five (5) .22 caliber shell casings in the front yard of 9512 Las Vegas Avenue. Plaintiff Jones spoke with the Oakland Police Officers in front of her house and gave them the name and phone number of her neighbor Jesse Enjaian and identified him as the sole resident and occupant of 9512 Las Vegas Avenue.

25. The Officers retreated to their vehicle parked in front of Plaintiff Jones' driveway and took up a defensive stance. The Officers instructed Plaintiff Jones to retreat inside her residence for her safety and protection. Jesse Enjaian was present at 9512 Las Vegas Avenue and witnessed Plaintiff Jones speaking with the Oakland Police Officers. Jesse Enjaian refused to exit his residence or speak with the Officers. The Oakland Police Officers left without speaking to or arresting Jesse Enjaian.

26. The following morning, on February 11, 2017, at approximately 9:00 a.m., Plaintiff Jones saw Jesse Enjaian in his backyard and called the Oakland Police Department to inform them of Jesse Enjaian's location. Two Oakland Police Officers responded to Plaintiff Jones' call. The Officers arrived wearing full police uniform, parked their plainly marked police vehicles in front of Plaintiff Jones' driveway and proceeded to Plaintiffs home. Plaintiff Jones spoke with the Officers on her front porch and inside her front door for approximately 5-10 minutes. Jesse Enjaian witnessed Plaintiff Jones' interaction with the Oakland Police Officers and became enraged. After speaking with Plaintiff Jones, the Officers approached Jesse Enjaian. Jesse Enjaian refused to speak with the Officers and instructed them to get off of his property. The Officers did not question or arrest Jesse Enjaian. They simply left. Defendants actions in contacting Plaintiff in front of Enjaian, "outing" her to Enjaian that she was complaining about his actions, thereby increased the danger and risk to Plaintiffs posed by Enjaian.

27. After the February 10, 2017 shooting and Defendants "outing" of Plaintiff to Enjaian, Plaintiff Jones was fearful for her safety and the safety of her young son, minor Plaintiff A.H. Plaintiff Jones changed her routines to avoid any interaction with her neighbor Jesse Enjaian, as she feared for her life knowing that he was in possession of firearms and ammunition. Plaintiff Jones refused to let her son, Plaintiff A.H., play outside their residence. Plaintiffs expected and relied on Defendant OPD to do their job by arresting Enjanian for the unlawful use of his firearm and the destruction of property.

**B. Second Shooting On February 13, 2017**

28. On February 13, 2017 at approximately 6:30 p.m., Plaintiff Jones, once again,

heard cracking noises outside of her residence. She proceeded to open her front door and stand in the doorframe. Plaintiff Jones witnessed Jesse Enjaian standing outside her residence wearing safety glasses and ear muffs and firing a long wooden handled rifle aimed at oncoming traffic.

29. Plaintiff Jones retreated into her residence and hid from Jesse Enjaian. Plaintiff Jones was terrified for her life.

**C. Third Shooting On February 14, 2017**

30. On February 14, 2017 at approximately 7:45 a.m., Plaintiff Jones, for the third time, heard cracking noises outside of her residence. Jesse Enjaian was shooting at and into a parked car on Las Vegas Avenue that was occupied at the time by a homeless man, Patrick Reddic. Patrick Reddic is African American. Mr. Reddic fled his vehicle and ran toward Jesse Enjaian's residence, unaware of who was shooting at him.

31. As Mr. Reddic approached begging for help, Jesse Enjaian yelled, "Get the fuck away from my door you fucking nigger!" "Yeah I shot your window and I got my gun right here!"

32. The Oakland Police Department responded to the shooting on Las Vegas Avenue and detained the homeless man, Mr. Reddic. The Officers were aware of the fact that Jesse Enjaian was the shooter, and aware of the statements he made to Mr. Reddic. However, the Oakland Police Officers failed to investigate, question, detain or arrest Jesse Enjaian or remove his firearms from the premises.

33. At approximately 8:30 a.m., Plaintiff Jones called the Oakland Police Department and reported the shooting incidents of both February 13, 2017 and February 14, 2017.

**D. Meeting with Officer Harold Castro On February 15, 2017**

34. On February 15, 2017 at approximately 9:30 a.m., Plaintiff Jones met with Oakland Police Officer Harold Castro with the Criminal Investigation Unit at the Oakland Police Department, 455 7th Street, Oakland, CA. Officer Castro was assigned as the primary investigator of the shooting incidents on Las Vegas Avenue on February 10, 13 and 14, 2017,

which assignment was made initially after the first shooting on February 10th.

35. Plaintiff Jones informed Officer Castro of the shooting incidents that occurred on February 10, 13 and 14, 2017. Officer Castro knew that Jesse Enjaian had executed three shootings within the week, was not detained, was still in possession of firearms and ammunition and was residing at his Las Vegas Avenue residence located directly adjacent to Plaintiff Jones' residence. Officer Castro knew that Jesse Enjaian was enraged after he witnessed Plaintiff Jones speaking with Oakland Police Officers on February 11, 2017, after the February 10, 2017 shooting incident. Officer Castro knew that Jesse Enjaian had targeted Mr. Owens and Mr. Reddic because they were African American.

36. Plaintiff Jones informed Officer Castro that she feared for her life and the life of her son. Officer Castro instructed Plaintiff Jones to contact the Reed Brothers Security company and have cameras installed on her property because of Jesse Enjaian's violent actions.

37. Further, Officer Castro assured Plaintiff Jones that the Oakland Police Department was "going to get a warrant" and they "had what they needed" to arrest Jesse Enjaian. Officer Castro conveyed to Plaintiff Jones that Jesse Enjaian's arrest was imminent.

38. Based on Officer Castro's representation that Jesse Enjaian would be arrested, Plaintiff Jones returned to her home on Las Vegas Avenue with her son, Plaintiff A.H. Had Plaintiff Jones known at the time that an arrest warrant would not be issued for Jesse Enjaian, she would not have returned to her residence.

**E. Phone Call with Officer Harold Castro On February 16, 2017**

39. On February 16, 2017 at approximately 12:00 p.m., Plaintiff Jones had security cameras installed at her residence. Jesse Enjaian was in his backyard and witnessed the installation of the security cameras. Upon seeing Jesse Enjaian in his backyard, Plaintiff Jones was shocked. She believed that Jesse Enjaian would have been detained and/or arrested by the Oakland Police Department.

40. Plaintiff Jones, fearing for her safety, called Officer Castro at approximately 2:00 p.m. Officer Castro assured Plaintiff Jones that the Oakland Police Department was "taking care of it." Officer Castro further assured Plaintiff Jones that the arrest of Jesse Enjaian

was "a priority."

41. Based on Officer Castro's representation that the Oakland Police Department would arrest Jesse Enjaian, Plaintiff Jones remained in her home with her son. Had Plaintiff Jones known at the time that an arrest warrant would not be issued for Jesse Enjaian, she would not have stayed at her residence.

42. The Oakland Police Department allowed Jesse Enjaian to remain free and in the possession of multiple firearms, knowing of his violent behavior, multiple shooting incidents and attempted murder of Patrick Reddic.

**F. Fourth Shooting On February 17, 2017**

43. On February 17, 2017 at approximately 9:00 a.m., Jesse Enjaian opened fire on Plaintiffs' residence and vehicle. Jesse Enjaian targeted Plaintiff Jones after witnessing her interactions with Oakland Police Officers in the proceeding days. Jesse Enjaian fired multiple rounds into Plaintiff Jones' home and vehicle.

44. Plaintiff Jones grabbed her son, Plaintiff A.H., and hid with him under the bed in her son's room as bullets flew through the windows for over forty (40) minutes. Plaintiff Jones and Plaintiff A.H. hid in fear as Jesse Enjaian attempted to murder them.

45. After over forty (40) minutes of gunfire, OPD shot and killed Jesse Enjaian.

**G. Community Meeting On March 2, 2017**

46. On March 2, 2017, representatives from the City of Oakland and Oakland Police Department held a community meeting at Plaintiff Jones' home on Las Vegas Avenue to discuss the incidents leading up to the February 17, 2017 shooting. Chief of Police Anne Kirkpatrick of the City and OPD stated that they "dropped the ball" and "mistakes were made" leading up to the shooting incident and promised in response to their failures to "look into" their operations, including officer training and the department's policies and procedures.

In follow up, on February 6, 2018, Chief Kirkpatrick told Plaintiff Jones that the City and OPD would "make changes" to their operations, training, policies and procedures in response to their failures leading up to the February 17, 2017 shooting.

**FIRST CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment Due Process Clause (42 U.S.C. § 1983)**
**(By All Plaintiffs Against Officer Castro and DOES 1-10)**

47. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

48. Defendants Officer Castro and DOES 1 through 10 failed to protect Plaintiffs from danger created by their actions and omissions.

49. Defendants Officer Castro and DOES 1 through 10 failed to properly investigate, detain and arrest Enjanian for his unlawful actions, placing Plaintiffs in a more dangerous position than they would have been in otherwise.

50. Defendants' acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs' constitutional rights.

51. In doing the acts complained of herein, Defendants Castro and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to the right to due process of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**SECOND CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment Equal Protection Clause (42 U.S.C. § 1983)**
**(By All Plaintiffs Against Officer Castro and DOES 1-10)**

52. Plaintiffs incorporate by reference the allegations in the preceding paragraphs, as if fully set forth herein.

53. Plaintiffs are a member of a suspect class and were unlawfully discriminated against because of their race.

54. Defendants Officer Castro and DOES 1 through 10 failed to protect Plaintiffs from danger created by their actions and omissions based on Plaintiffs race.

55. Defendants Officer Castro and DOES 1 through 10 failed to properly investigate, detain and arrest Enjanian for his unlawful actions based on Plaintiffs race and the

race of the other witnesses involved, including, but not limited to, Mr. Reddic and Mr. Owens.

56. Defendants' acts were intentional, malicious, willful, wanton, obdurate, and in gross and reckless disregard of Plaintiffs' constitutional rights.

57. In doing the acts complained of herein, Defendants Officer Castro and DOES 1-10, inclusive, and/or each of them, acted under color of law to deprive Plaintiffs of certain constitutionally protected rights, including, but not limited to the right to equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution.

WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

**THIRD CLAIM FOR RELIEF**
**Violation of the Fourteenth Amendment (42 U.S.C. § 1983 - *Monell*)**
**(By All Plaintiffs Against Defendants City of Oakland and OPD)**

58. Plaintiffs incorporate by reference the allegations in the preceding paragraphs as if fully set forth herein.

59. Defendants the City and OPD are liable for the actions taken by Officer Castro and DOES 1 through 10, as alleged above, for the following reasons:

1. Officer Castro, and DOES 1 through 10, acted in accordance with officially adopted and promulgated City policies;

2. The City and OPD failed to adequately train or supervise its police officers. Specifically, the City and OPD failed to train its officers to protect Plaintiffs from danger created by its officer's actions. The City and OPD had ample and advanced warning that violence was likely to occur, because violence had already occurred; however, despite this knowledge, the City and OPD failed to train its officers to appropriately respond to similar acts of violence that occurred in this case. Accordingly, there was an obvious need for the officers to receive appropriate training, which the City and OPD did not provide; and

3. The City and OPD's training of its police officers, including Officer Castro, was deficient and inadequate and failed to protect the civil rights of Plaintiffs; and

4. The City and OPD's policies and procedures resulting in Officer Castro's and the other police officers' failure to properly investigate, detain and arrest Enjanian for his unlawful actions failed to protect the civil rights of Plaintiffs.

60. As a direct and proximate consequence of the Individual Defendants' violations of the Plaintiffs federal civil rights under 42 U.S.C. § 1983 and the Fourteenth Amendment, Plaintiffs were physically, mentally, and emotionally injured and damaged, in addition to being deprived of their constitutional rights, and the City is liable for such damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following:

1. For all damages legally and or proximately caused to Plaintiffs by Defendants in an amount to be determined at trial;
2. For punitive and exemplary damages for all claims for which such damages are authorized;
3. For an award of attorneys' fees incurred in bringing this Action against Defendants, pursuant to 42 U.S.C. § 1988;
4. For costs of suit incurred herein; and
5. For such other and further relief as the Court deems just and proper.

///

///

///

///

///

///

///

///

///

///

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs Andrea Jones and A.H. demand trial by jury on all claims in this action.

DATED: February 21, 2019

HERSH & HERSH
A Professional Corporation

By /s/ CHARLES C. KELLY, II

CHARLES C. KELLY, II (SBN: 122253)
ckelly@hershlaw.com
MONTANA BAKER (SBN: 319491)
mbaker@hershlaw.com
HERSH & HERSH
A Professional Corporation
601 Van Ness Avenue, Suite 2080
San Francisco, CA 94102-6396
(415) 441-5544
Attorneys for Plaintiffs