UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREA JONES, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF OAKLAND, et al.,<br><br>Defendants. | Case No. 19-cv-00789-HSG<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION TO DISMISS** |

On February 13, 2019, Plaintiffs Andrea Jones, as an individual and as the Guardian ad Litem for her minor son, A.H., brought this action against Defendants City of Oakland, Oakland Police Department ("OPD"), and Oakland Police Officer Harold Castro, in his individual and official capacities. Dkt. No. 3. On February 21, 2019, Plaintiffs filed an amended complaint. Dkt. No. 8 ("FAC"). Pending before the Court is Defendants' motion to dismiss the amended complaint, briefing for which is complete. Dkt. Nos. 21 ("Mot."), 22 ("Opp."), 26 ("Reply"). After carefully considering the parties' arguments, the Court **GRANTS** Defendants' motion.

**I. BACKGROUND**

This case involves an undisputedly disturbing incident that occurred in 2017. Plaintiffs are African American and at all relevant times resided in Oakland, California next to Jesse Enjaian, an unnamed party. FAC ¶ 16. Mr. Enjaian is alleged to have been mentally unstable, possessed firearms at his residence, and was prone to violence against his neighbors. *Id.* ¶ 18. Plaintiffs' claims arise out of Defendants' actions in response to a series of Mr. Enjaian's violent outbursts over the course of seven days. *See id.* ¶¶ 18–46.

First, on February 10, 2017, Mr. Enjaian "shot at and destroyed a parked vehicle in front of Plaintiff Jones' residence." *Id.* ¶ 20. Plaintiffs allege that Mr. Enjaian targeted the vehicle

because it belonged to an African American man. *Id.* ¶¶ 20–21. That evening, Plaintiff Jones spoke with Oakland Police Officers regarding the incident and provided them with Mr. Enjaian's name and phone number. *Id.* ¶ 24. The following morning, Plaintiff Jones saw Mr. Enjaian in his backyard and called OPD to inform them of Mr. Enjaian's location. *Id.* ¶ 26. Two officers responded to the call in full police uniforms and parked their police vehicles in front of Plaintiff Jones' driveway. *Id.* Mr. Enjaian purportedly "became enraged" upon witnessing Plaintiff Jones speak with the officers on her front porch and inside her front door. *Id.* The officers approached Mr. Enjaian, but he "refused to speak with the officers and instructed them to get off of his property." *Id.*

On February 13, 2017, Plaintiff Jones observed Mr. Enjaian standing outside her home, firing a rifle at oncoming traffic. *Id.* ¶ 28. The next day, Mr. Enjaian shot at a vehicle occupied by an African American man and later yelled racial slurs at the man. *Id.* ¶¶ 30–31. On February 15, 2017, Plaintiff Jones reported both shooting incidents to OPD and at that time met with Defendant Castro, the assigned primary investigator. *Id.* ¶¶ 33–34. Plaintiff Jones shared that she feared for her and her son's lives. *Id.* ¶ 36. Defendant Castro advised Plaintiff Jones to install security cameras on her property, that OPD was "going to get a warrant," and that OPD "had what they needed" to arrest Mr. Enjaian. *Id.* ¶¶ 36–37.

The following day, Plaintiff Jones called Defendant Castro after seeing Mr. Enjaian in his backyard, in response to which Officer Castro stated that OPD was "taking care of it," and that Mr. Enjaian's arrest was a "priority." *Id.* ¶¶ 39–40. Finally, on February 17, 2017, Mr. Enjaian "opened fire on Plaintiffs' residence and vehicle." *Id.* ¶ 43. OPD ultimately shot and killed Mr. Enjaian. *Id.* ¶ 45.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

2

legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). The Court also need not accept as true allegations that contradict matter properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. *Sprewell*, 266 F.3d at 988.

If the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal citations and quotation marks omitted).

### III. DISCUSSION

Plaintiffs brings claims against Officer Castro under 42 U.S.C. § 1983 ("Section 1983") for purported violations of their rights under the Due Process and Equal Protection Clauses. FAC ¶¶ 47–57. Plaintiffs further bring a *Monell* claim against the City of Oakland and OPD. *Id.* ¶¶ 58–60; *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978). Defendants move to dismiss each cause of action.

#### a. Due Process Clause

"[A] State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). The Ninth Circuit, however, recognizes a "danger creation"

3

exception to this general rule, which applies if a defendant "affirmatively" places a plaintiff in a situation more dangerous than the plaintiff would have otherwise faced. *Hernandez v. City of San Jose*, 897 F.3d 1125, 1133 (9th Cir. 2018). "The affirmative act must create an actual, particularized danger and the ultimate injury . . . must be foreseeable." *Id.* (citing *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1063 (9th Cir. 2006), and *Lawrence v. United States*, 340 F.3d 952, 957 (9th Cir. 2003)). The government actor must also have acted with "'deliberate indifference' to a 'known or obvious danger.'" *Id.* (quoting *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 974 (9th Cir. 2011)).

Plaintiffs argue the "danger creation" exception applies and focus on two "acts" in particular. First, Plaintiffs allege that when Officer Castro's subordinates spoke with Plaintiff Jones in front of Mr. Enjaian, these officers effectively "out[ed]" her, thus increasing her risk of danger. *See* Opp. at 14–15. But Plaintiffs cite no case that supports the proposition that speaking with a witness in this manner creates an actual, particularized, and foreseeable danger to the witness. Officers routinely speak with witnesses, and it cannot be the case that any subsequent failure to arrest the suspect gives rise to a constitutional violation. Second, Plaintiffs contend that Officer Castro gave Plaintiffs a false sense of security by stating that OPD was "going to get a warrant" and "had what they needed" to arrest Mr. Enjaian. *See id.*; FAC ¶ 37. But Officer Castro's statements did not affirmatively place Plaintiffs in a *more dangerous* situation, as is required to plead facts under the "danger creation" exception. *See Hernandez*, 897 F.3d at 1133.

Both in their papers and at the hearing on this motion, Plaintiffs primarily relied on *Hernandez* to oppose dismissal. *See* Opp. at 13–16. In particular, Plaintiffs contend that Officer Castro's representations created the more dangerous situation necessary to state a claim because, absent his representations, Plaintiffs would have moved to a safer location. *See id.* at 15. But the Court finds Plaintiffs' reliance on *Hernandez* unavailing. Unlike in *Hernandez*, where officers instructed and "required" rally attendees to walk through a dangerous crowd of protesters, Officer Castro here neither directed Plaintiffs to go anywhere nor prevented them from retreating to a safer location. *Compare Hernandez*, 897 F.3d at 1133, *with* FAC ¶¶ 34–42. Officer Castro also did not promise Plaintiffs that OPD would arrest Mr. Enjaian on a particular day; he said only that

4

OPD was working to obtain a warrant and would take care of the situation, the truthfulness of which Plaintiffs do not dispute. *See* FAC ¶ 37. Further, Plaintiffs do not assert that Officer Castro told Plaintiffs they were safe at home. Plaintiffs instead argued at the hearing that by stating that OPD sought to obtain a warrant, Officer Castro "impliedly" assured Plaintiff Jones that it was safe to stay at home. But no case law supports extending the affirmative act requirement of the "danger creation" exception to such "implied" assurances.

### b. Equal Protection Clause

Relying on *Elliot-Park v. Manglona*, 592 F.3d 1003 (9th Cir. 2010), Plaintiffs next allege that because Officer Castro knew Mr. Enjaian's actions were racially discriminatory, Officer Castro's failure to arrest, detain, or investigate Mr. Enjaian in a timely manner was itself racially discriminatory. Opp. at 19–20. But *Elliot-Park* does not support Plaintiffs' theory of liability. Unlike in *Elliot-Park*, for example, Plaintiffs do not allege that Officer Castro more thoroughly investigated similar crimes that were not racially motivated, which might evidence his own racially discriminatory motive. *See* 593 F.3d at 1006. More to the point, the complaint nowhere so much as suggests that Officer Castro took any action or chose not to take any action due to Plaintiffs' race. And Plaintiffs cite no case law to support the proposition that failure to properly investigate a racially-charged crime constitutes racial discrimination by an officer.

### c. *Monell* Claim

Plaintiffs last allege that the City of Oakland and OPD failed to adequately train or supervise its police officers, resulting in a violation of Plaintiffs' civil rights. FAC ¶¶ 58–60. Absent a constitutional deprivation, however, a *Monell* claim necessarily fails. *See City of L.A. v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point"). Because Plaintiffs do not sufficiently allege a constitutional deprivation, it follows that Plaintiffs fail to state a *Monell* claim.

//

//

//

## IV. CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss. Dismissal is with leave to amend. Any amended complaint must be filed within 28 days of the date of this order.

**IT IS SO ORDERED.**

Dated: 7/26/2019

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge